warrant of attorney was not a voluntary act, but the effect of fear, however groundless that might be." On this ground a new trial was refused.

The remaining inquiry is whether this security and preference is to be considered as.having been given "in contemplation of bankruptcy." This is a phrase borrowed from the laws of England, and it is reasonable to suppose that it was intended by the legislature to be used in the same legal sense that it bears in that country. But, unfortunately, even there its signification does not appear to have been defined with perfect accuracy. I shall venture at present to consider this equivalent, or nearly so, to the phrase "in expectation of stopping payment." Did these debtors entertain such an expectation when they gave the bond and warrant of attorney? This is charged by the petitioning creditors to have been done on or about the 4th of June last. The charge, as circumstantially set forth in the petition, is met by general denial in the answers of the debtors, and this denial is followed by what purports to be a narrative of the circumstances which led to the giving of the security in question, and an admission of the execution of the bond and warrant, for the purpose and to the amount charged, without stating the date of the transaction. It is very clear, however, that it could not have been long before the time charged, and from the manner of the denial and the circumstances of the case, it is, I think, to be assumed that it was done very near that time, and probably on the 3d of June. On the 13th of June, but a few days after, on being called upon by one of the petitioning creditors in behalf of his firm for payment or security, C. K. Loomis, one of the respondents, said he would consult his partner and take counsel on the subject; and shortly after he declined a compliance with the creditor's demand. It is stated, also, in the answer of C. K. Loomis, that the firm considered itself solvent, and was in good credit, until the 3d of June. From this statement the inference is nearly irresistible that they did not so consider themselves afterwards. Upon the whole, therefore, I am of opinion that the preference may reasonably be supposed to have been given in contemplation of bankruptcy.

But the respondents are further charged with having fraudulently, in contemplation of bankruptcy, and for the purpose of giving preference, etc., "voluntarily suffered executions to be issued" on the judgments confessed by them, and their property, real or personal to be levied upon, in virtue thereof, before the lapse of 30 days from the entry of the judgments. In response to this charge, the debtor admits that, pending the application to them by the petitioning creditors for payment or security, the plaintiffs in the judgments confessed, becoming alarmed, immediately caused all the property of the firm to be levied on, and their store to be shut up by the sheriff. Who communicated to the plaintiffs the information which occasioned their alarm, or whether the respondents had any active agency in causing execution to be taken out, does not expressly appear. But their silence upon these points, their admitted anxiety to secure the plaintiffs, and the fact that the plaintiffs had not right to take out execution and make a levy at the time they did, and the acquiescence of the respondents in these illegal acts, which resulted in putting a stop to their business as traders.—are circumstances tending strongly to support this second charge. Upon the whole, therefore, I feel constrained to grant the decree of bankruptcy prayed for. My refusal to grant it would by the act be final, while under this decision, the debtors have a right to demand a trial by jury, whereby they may have a further opportunity to explain the transactions complained of, and repel the inferences I have drawn from their answers, if these inferences are not warranted by the truth of the case.

In conclusion, it is proper to add, that my decision by no means infers any actual, intentional fraud on the part of these gentlemen. Their desire to fulfil their engagements to their indorsers was natural, and, in a moral point of view, may be admitted to have been commendable. But the leading policy of the bankrupt act is to secure equality among the creditors of failing debtors in the distribution of their effects. The acts of these debtors are in contravention of this policy, and therefore bring them within the law. Independently of the bankrupt act, the confession of these judgments would have been legal, and was probably supposed to be so, notwithstanding this law. A decree of bankruptcy must be granted.

STEWART (MADDOX v.). See Case No. 8,934.

## Case No. 13,434.

STEWART v. MAHONEY.

[See 5 Fed. 302].

STEWART (MILLER v.). See Case No. 9 591.

## Case No. 13,435.

STEWART v. NATIONAL UNION BANK OF MARYLAND.

[2 Abb. U. S. 424; 2 Balt. Law. Trans. 951; 1 Thomp. Nat. Bank Cas. 175; 4 Am. Law Rev. 397; 10 Int. Rev. Rec. 132.] 1

Circuit Court, D. Maryland. Oct., 1869.

CREDITOR'S BILL—POWERS OF NATIONAL BANKS—VOID CONTRACTS.

1. By a creditor's bill it appeared that the judgment debtor had assigned certain assets,

1 [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission. 4 Am. Law Rev. 397, contains only a partial report.]